JOHN ENGELHORN & SONS, Inc., Plaintiff-Appellant,

v.

Sol RICH, individually and as Trustee under various Trusts, et al., etc., Defendants-Appellees,

and

E. G. James Company, Third-Party Defendant-Appellee.

No. 12073.

United States Court of Appeals Seventh Circuit.

Dec. 19, 1957.

Marvin S. Berz, J. H. Schwartz, Jacob Cohen, Chicago, Ill., for appellant.

J. R. Blomquist, J. Arthur Miller, Chicago, Ill., for defendants-appellees.

George M. Schatz, Harvey Shapiro, Chicago, Ill., for third-party defendant-appellee.

Before FINNEGAN, HASTINGS and PARKINSON, Circuit Judges.

HASTINGS, Circuit Judge.

This was an action to recover $10,-689.42 for meat alleged to have been sold and delivered by plaintiff (appellant), John Engelhorn & Sons, Inc., to defendant partnership d/b/a North American Cold Storage. The defendant joined the third party defendant, E. G. James Company (referred to herein as "James"), alleging that if defendant were found liable to plaintiff it would be due to misrepresentations by James to plaintiff that defendant was the buyer of the meat, and praying judgment against James for any sums that might be adjudged against defendant. Defendant and James are the appellees herein.

The case was tried to the court without a jury. At the close of plaintiff's evidence the court, on defendant's motion, dismissed plaintiff's complaint and entered judgment for defendant. The court also dismissed the third party complaint of defendant. From this judgment plaintiff appeals.

The ultimate contested issues are whether or not defendant bought and received the meat, whether there was compliance with the Illinois Statute of Frauds, and whether the court's findings of fact were clearly erroneous.

The following statement of pertinent facts is reflected by the record in this cause. Plaintiff corporation is a meat packer in Newark, New Jersey. Defendant operates a cold storage warehouse in Chicago, Illinois, with Harry Grabiner as its manager. James corporation is a Chicago broker, with George Haynes and Alcott Wallmo as two of its meat brokers. Tillen & Company,

Inc., an Illinois corporation, acting through its president, Arnold Tillen, is a buyer and seller of meat products (sometimes characterized as a meat speculator and referred to herein as "Tillen").

On March 12, 1954, Tillen called Haynes at the James office and asked him to locate 50,000 pounds of green rough pork jowls which it desired to purchase. Tillen directed Haynes not to disclose its identity as the purchaser to the seller, but to purchase the meat for the account of defendant, James (through its broker, Wallmo) found that plaintiff had the desired product and before the close of that business day negotiated the sale. On the same day James prepared a written confirmation of the order and mailed copies to plaintiff, defendant and Tillen. On Tillen's instruction, James set out in the confirmation that plaintiff was the seller and defendant was the buyer, the terms and conditions of the sale, and that payment was to be made by sight draft, bill of lading attached, payable through City National Bank and Trust Company of Chicago, to be charged to the account of defendant. Before it was mailed Haynes wrote on the top line of defendant's copy of the confirmation with a blue pencil, "Attention Harry Grabiner for Tillen."

March 12, 1954 was on Friday and the confirmation was received by defendant and brought to its attention on Monday, March 15, 1954. This was defendant's first knowledge of the transaction and Grabiner, as manager of defendant, immediately telephoned Haynes (acting for James) and "told him that the confirmation was in error, that we were not buyers and never were any buyers, and that this confirmation would have to be changed * * * to read 'Buyer, care of North American Cold Storage Company.'" Haynes then telephoned Tillen and told him of his conversation with Grabiner and Tillen authorized the issuance of a corrected confirmation. Haynes prepared a corrected confirmation showing the buyer to

be "c/o North American Cold Storage Co.," mailed it to the same three parties on that day. Except for this change in the designation of the buyer the confirmation remained as originally mailed by James on March 12, 1954.

In the meantime, on receipt of the confirmation of March 12, 1954, plaintiff started processing the order and on March 16, 1954 wrote defendant a letter saying, "This will confirm the following sale made to you through E. G. James" and reciting the order and its terms and conditions and method of payment. This letter crossed in the mail the second confirmation issued by James. On receipt of this letter from plaintiff the defendant, as Grabiner testified "immediately called George Haynes (for James) and told him that we had received a confirmation from Engelhorn stating that this is confirming the purchase made by you for the North American Cold Storage Company as stated in there of 50,-000 pounds of rough jowls, and I said this is entirely wrong, and I believe I asked him at that time whether it would be necessary for me to write or wire Engelhorn and Sons, Inc., and the answer was he had already sent corrected confirmation out that I had in my hand at the time." Defendant did not contact plaintiff at any time.

When defendant received the March 16, 1954 letter of confirmation from plaintiff, Grabiner made a notation thereon "to be corrected thru Haynes" and its manager made a notation to "hold draft wait instructions from Engelhorn."

On March 19, 1954 plaintiff shipped 35,275 pounds of jowls from its plant in Newark, New Jersey, via Packers Express, a common carrier, consigned to defendant in Chicago, with a sight draft, bill of lading attached, on the City National Bank and Trust Company of Chicago. On or about March 22, 1954, this shipment arrived at defendant's docks and Joseph Arredia (shipping clerk of defendant) telephoned Tillen and notified him of the shipment. (Tillen had called Arredia the day before the shipment arrived and told him the shipment was

coming in and not to unload any of the merchandise until Tillen was notified.) Tillen told Arredia to direct the truck driver to deliver the meat to Tillen's warehouse in Chicago and this was done. The sight draft, with bill of lading attached, was presented to the bank for payment and defendant, on orders from Tillen, instructed the bank to hold the draft and not make payment. There is some evidence to the effect that Tillen took this course because the meat was substandard. Tillen had also directed defendant not to disclose its identity as the buyer to plaintiff.

On March 23, 1954 Tillen telephoned James and requested them to notify plaintiff that there would be a truck in New York and that it could pick up an additional 25,000 pounds of jowls. James thereupon sent a teletype message to plaintiff that "North American Cold Storage Company, buyer" would do that. There is no evidence that defendant knew anything about this transaction. Plaintiff responded and the same day delivered 12,805½ pounds of green rough pork jowls to a truck owned by Tillen which called at plaintiff's docks in New Jersey. The truck driver receipted for the meat by signing the name "Tillen & Co." on the statement presented to him by plaintiff. Subsequently, all of the jowls were shipped by Tillen to Emge Company, Fort Branch, Indiana.

Defendant's first contact with plaintiff was after all the meat had been shipped when plaintiff telephoned defendant to find out why the drafts had not been paid. At that time defendant told plaintiff the buyer had directed that payment be held up, and also refused to disclose the buyer's identity.

There was evidence of previous transactions showing meat purchases by Tillen through James as agent for the account of defendant. However, there was no showing that plaintiff had any knowledge of this or relied upon it. Further, in those cases the meat was stored in defendant's warehouse and held as collateral for defendant's payments. It was established that this was plaintiff's first transaction in which defendant's name was involved. Also, there was evidence that at the time of this litigation Tillen was no longer in business.

■ The trial court entered its findings of fact and stated its conclusions thereon favorable to defendant. We have set out the substance of the material evidence (the effect of some of which is disputed by plaintiff) because appellant vigorously contends it warrants the relief sought in the complaint and that the findings are clearly erroneous. We disagree. A careful search of the entire record reveals to our satisfaction that the court's findings are amply supported by the evidence and are not clearly erroneous. Under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. we cannot disturb them.

■■ Plaintiff contends that defendant was acting as an agent for an undisclosed principal and was therefore liable as though it were the real party in interest. It further contends that defendant acquiesced in and ratified the acts of James and was thereby estopped from denying the authority of James to act as its broker. Since the findings are against plaintiff on each of these factual issues it is not necessary for us to discuss the law of agency cited in this connection.

The court below further found and held that the alleged contract, if any had existed, would be unenforceable against defendant as barred by the Illinois Statute of Frauds. The Illinois Revised Statutes (1955), Ch. 121½, Sec. 4, Par. (1), provides:

"A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale

be signed by the party to be charged or his agent in that behalf."

■ Since the findings and the evidence clearly show that the value of the jowls was more than $500, that nothing was signed by defendant or any authorized agent of defendant, that defendant did not accept or receive any part of the meat, and that defendant did not make any payment for any part of the order or give anything in earnest to bind the contract, there was no error in the court's determination of this issue adversely to plaintiff.

The judgment below is

Affirmed.